UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Brian Vierstra** | : | |
| **10220 Canoe Lane** | : | |
| **Thornville, Ohio 43076** | : | |
| *and* | : | Case No. 2:23-CV3042 |
| **Stephanie Vierstra** | : | |
| **10220 Canoe Lane** | : | JUDGE: |
| **Thornville, Ohio 43076** | : | |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| Anthony Hamilton, Badge #351 | : | |
| 901 Woody Hayes Drive | : | |
| Columbus, Ohio 43210 | : | |
| and | : | |
| Aaron J. Patterson, Badge #324 | : | |
| 901 Woody Hayes Drive | : | |
| Columbus, Ohio 43210 | : | |
| and | : | |
| Douglas Welker, Badge #326 | : | |
| 901 Woody Hayes Drive | : | |
| Columbus, Ohio 43210 | : | |
| and | : | |
| Trey Dupplessie, Badge #310 | : | |
| 901 Woody Hayes Drive | : | |
| Columbus, Ohio 43210 | : | |
| and | : | |
| Steven Edward Laman, Badge #332 | : | |
| 901 Woody Hayes Drive | : | |
| Columbus, Ohio 43210 | : | |
| and | : | |
| Joanna Shaul, Badge #238 | : | |
| 901 Woody Hayes Drive | : | |
| Columbus, Ohio 43210 | : | |
| and | : | |
| John Doe Police Officers and Supervisors | : | |
| Names Unknown | : | |
| Addresses Unknown | : | |
| *Defendants.* | : | JURY DEMAND ENDORSED |
| | : | HEREON |

# COMPLAINT

This case arises out of Plaintiffs Brian and Stephanie Vierstra's violent encounter with several Ohio State University Police Officers while attending a concert hosted and sponsored by The Ohio State University.

## PARTIES

1. Plaintiffs Brian and Stephanie Vierstra are residents of Thornville, Ohio, located in Perry County, in the Southern District of Ohio.

2. Brian Vierstra is a retired Ohio State Highway Patrolman, having served as a law enforcement officer for over 20 years. Stephanie Vierstra is a teacher's aide and former Ohio State High Patrol dispatcher. The Vierstras have been married for over 23 years.

3. Defendants are or were all times relevant, duly sworn and active law enforcement officers, employed by The Ohio State University ("OSU").

4. Defendant OSU Officers are being sued in their individual capacities.

## JURISDICTION

5. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§1331, this being a civil action arising under the Constitution and the laws of the United States.

6. Jurisdiction is also conferred upon this Court pursuant to 28 U.S.C. §§1343(a)(3) and (4), and 42 U.S.C. §§1983 and 1988, this being an action for damages authorized by law to redress deprivations under color of law of rights, privileges and immunities secured by the Constitution of the United States. This Court has supplemental jurisdiction over the Ohio state law causes of action asserted herein under 28 U.S.C. §1367.

7. The incident that is the subject of this action occurred at the Jerome Schottenstein Center (the "Schott"), a 19,049-seat arena located at 555 Borror Drive, Columbus, Ohio 43210, and on the campus of The Ohio State University, in Franklin County, Ohio.

8. Because this District is the district within which Defendants reside and moreover, encompasses the area in which the events concerned took place, venue is proper under 28 U.S.C. §1391(b)(1-2).

## STATEMENT OF FACTS

9. On September 23, 2021, Brian and Stephanie Vierstra (the "Vierstras") attended a music concert given by the musical group Guns N' Roses. Several thousand people attended the event.

10. During the concert, several law enforcement officers employed by The Ohio State University (including those named as Defendants herein) were present and working at the Schott.

11. The Vierstras attended the concert with Lyle Sawyer and Michelle Sawyer ("the Sawyers") and Brad Leonard and Angie Leonard ("the Leonards"). The Vierstras, the Sawyers, and the Leonards are longtime friends who travelled to the concert together. The Vierstras, the Sawyers, and the Leonards purchased reserved seats for the concert that were located on the last row of the floor of the arena, stage right.

12. During the concert, a disturbance arose when at least two individuals who did not have tickets on the floor of the arena entered the already crowded area where the Vierstras, the Sawyers, and the Leonards had designated seats.

13. The disturbance escalated when Brian Vierstra requested assistance from arena security representatives and asked that the individuals improperly occupying the space show their tickets to the security representatives.

14. OSU Officers responded to the disturbance and escorted Brad Leonard and another individual believed to be Charles Baker, to another area of the arena.

15. OSU Officer Shaul interviewed Charles Baker, one of the individuals who was creating the disturbance and did not have a ticket for the area where he was occupying. During the

interview, Baker admitted that the disturbance began because he did not have a ticket for the area he was possessing. Baker also identified Brian Vierstra as the individual who sought assistance from security representatives to check his ticket and Brad Leonard as the individual who struck him in the face.

16. Brad Leonard was detained in a jail cell located in an area inside the arena and charged with disorderly conduct.

17. After OSU Police Officers removed Brad Leonard from the concert area, they instructed Angie Leonard, the Sawyers and the Vierstras to leave the concert. Angie Leonard, the Sawyers and the Vierstras attempted to comply and began exiting the area amidst the huge crowds, loud music and confusion.

18. As Brian Vierstra began to walk up the stairs towards the exit, OSU Officer Welker and approximately three other OSU Officers including Officer Patterson and Officer Duplessie, grabbed Brian Vierstra and push him up the stairs while also preventing him from using the handrail, causing him to stumble. As the group continued to exit, OSU Officers shoved Lyle Sawyer three times.

19. After exiting the building, Angie Leonard, the Sawyers and the Vierstras , received a phone message from Brad Leonard (who was still in a jail cell inside the building) asking them to come back inside the building and pick him up at Room 118. The group re-entered the building for the sole purpose of locating their missing companion.

20. The group was immediately met by OSU Officers who instructed them to go back outside. The group, including Brian Vierstra, complied with these instructions and exited the building. Frequently, during this interaction, Mr. Vierstra encouraged compliance and asked the group to remain calm so that he could ask the officers for assistance in finding the missing member of the group, Brad Leonard.

21. After the Vierstras and the Sawyers exited the building and were standing outside, Brian Vierstra attempted to ask Officer Hamilton a question regarding the whereabouts of Mr. Leonard. During this interaction between Mr. Vierstra and Officer Hamilton, Stephanie Vierstra was standing behind Mr. Vierstra. While still standing outside of the building, Mr. Vierstra said to Officer Hamilton, "I just need one…"

22. Before finishing his sentence, Officer Hamilton forcefully, with bent knees and with both hands, shoved Mr. Vierstra with such violent force that it caused <u>both</u> Stephanie Vierstra and Brian Vierstra to fall to the concrete ground.

23. Stephanie Vierstra's head hit the ground with such force, she immediately lost consciousness.

24. A true and accurate still photo taken from the body camera from one of the responding OSU Officers is included in this paragraph 24.



25. Brian Vierstra's head also hit the ground causing blood to stream from the side of his face.

5

26. After Brian Vierstra fell to the ground, two OSU officers, including Officer Hamilton descended upon Mr. Vierstra. While Mr. Vierstra was seated on the ground, one OSU officer grabbed and twisted Mr. Vierstra's left arm counterclockwise while Officer Hamilton jumped on Vierstra's back, forcing Vierstra's body flat on the ground.

27. A true and accurate still photo taken from the body camera from one of the responding OSU Officers is included in this paragraph 27:



28. Defendants' violent takedown of Brian Vierstra resulted in multiple bruises and lacerations to his face and body and a complete rotator cuff tear of the left shoulder, requiring surgical intervention and a course of physical therapy.

29. Officer Hamilton's violent shove caused multiple lacerations and bruises to Stephanie Vierstra's head and body.

30. A true and accurate picture of Stephanie Vierstra's injuries after she regained consciousness is included in this paragraph 30.



31. During the assaults on the Vierstras, Lyle Sawyer watched in horror while standing further away from the exit and towards the parking lot. At least four OSU officers forcibly approached Mr. Sawyer without notice. One OSU officer shouted to Mr. Sawyer: "Put your hands behind your back before I slam you on the fucking ground." Mr. Sawyer gave no resistance and asked: "So what did I do?" The OSU officer responded: "Because you run your fucking mouth too much that's what." Mr. Sawyer responded: "I am worried about the girl on the ground."

32. OSU Officers handcuffed both Lyle Sawyer and Brian Vierstra and loaded them in separate police cars. Brian Vierstra was never permitted to check on the condition of his wife as she lay lifeless on the ground.

33. A true and accurate picture of Brian Vierstra after his violent takedown is included in this paragraph 33:



34. Brian Vierstra and Lyle Sawyer were transported to OSU Police Department Headquarters and held in jail cells. They remained in the jail cells until the next day after being processed and released.

35. OSU Officer Douglas Welker prepared sworn complaints against Brian Vierstra and Lyle Sawyer charging them both with disorderly conduct in violation of Columbus City Code §2317.11(A)(1), a misdemeanor of the fourth degree. The complaints were filed in Franklin County Municipal Court, Case Numbers 2021CRB13775 and 2021CRB013772 respectively.

36. OSU Officer Joanna Shaul notified defense counsel for Brian Vierstra and Lyle Sawyer that she and others participated in the decision to initiate criminal proceedings and thereafter took the steps necessary to do so.

37. On or about September 29, 2021, as part of his duties as an OSU police officer, Officer Hamilton prepared and signed an Action Response Report (ARR) 2021-02064, dated September 29, 2021.

38. In the ARR, Officer Hamilton falsely asserted that prior to pushing him to the ground, Vierstra "clenched his jaw, puffed up his chest, and lunged toward my direction. Based on his actions, Vierstra displayed positive pre-attack indicators. I pushed Vierstra back causing him to lose balance. As he fell, he collided with his wife causing her to fall." A true and accurate copy of the September 29, 2021 ARR completed by Officer Hamilton is attached as Exhibit A.

39. The ARR completed by Officer Hamilton also falsely stated that Stephanie Vierstra was injured as a result from a fall that occurred "prior to officer arrival."

40. In November 2021, The University Police Division of the Ohio State University conducted a review of Officer Hamilton's use of force and the Action Response Report 2021-02064. The findings of the review were set forth in a report prepared by OSU Deputy Chief Tracy L. Hahn. A true and accurate copy of the report is attached as Exhibit B.

41. The review found Officer Hamilton's conduct to be wrongful and a violation of law and/or police procedures:

> [T]his use of force does not meet the reasonableness standard for the facts and circumstances confronting Officer Hamilton as stated in <u>Graham v. Connor</u>. Pushing someone away with such force as to knock down two people just to close a door is not reasonable. Officer Hamilton could have utilized his fellow officers on the scene and additional de-escalation tactics in this situation.

42. The review also found that Hamilton incorrectly checked the box on the ARR indicated that there was "Injury prior to Officer Arrival":

9

There is no evidence of any injury to Mr. Vierstra's right side of his face prior to the push by Officer Hamilton. After the push to the ground there is blood seen streaming down the right side of Mr. Vierstra's face in the BWC video. The ARR also states that was no medical treatment given, but the "Treatment Given by" box is checked with "Other Self." Mrs. Vierstra had a previous injury to her chin that was re-opened by her fall, she additionally complained of a laceration to the back of her head from the fall. There was a medic from the Schottenstein Center called to the scene to treat Mrs. Vierstra, who refused treatment. None of this information was noted in the ARR by Officer Hamilton. On BWC video Officer Hamilton is heard talking to Mrs. Vierstra saying her injuries were pre-existing and she stated the laceration to the back of her head was from the fall, not pre-existing.

43. The review concluded that Officer Hamilton violated OSU police policy as follows:

    a. 4.1.1 Degree of force: push/shove could have potentially been avoided if proper de-escalation techniques were used. There has been a pattern developing in which Officer Hamilton quickly uses force when other options are available, such as using de-escalation techniques that have been taught to officer or utilizing other officer on the scene for assistance.
    b. 4.2.1 Action Response Report (ARR) Lack of properly completing the ARR: no officers or witnesses listed and/spelling grammar errors. Injury Prior to Officer Arrival section: stated yes which is not correct based on BWC video evidence. NO photos were taken of the injuries. Mrs. Vierstra not listed on the ARR and there was no mention of her injuries.

44. On or about January 5, 2022, the Assistant City Attorney for the City of Columbus dismissed the case against Brian Vierstra.

45. On February 28, 2022, the Assistant City of Attorney for the City of Columbus dismissed the case against Lyle Sawyer.

46. All of the said acts by the Defendants were done within the scope of their employment; under color of state law, recklessly, wantonly, in bad faith and/or maliciously.

47. As a proximate result of the said acts by the Defendants, Plaintiffs suffered, and continue to suffer severely traumatic effects of this extremely upsetting experience. Plaintiffs have suffered and continue to suffer, physical pain and suffering and other physical symptoms including insomnia, nervousness, and nightmares; extreme mental and emotional upset and

anguish; legal, medical and other expense; fear, embarrassment, and inconvenience. Mr. Vierstra was also forced to incur legal expenses defending the criminal prosecution.

## CLAIMS FOR RELIEF

### First Count: Excessive Force – as to Defendants Anthony Hamilton and John Doe Officer

48. Plaintiffs incorporate by reference the allegations above, as if fully restated herein.

49. The said acts of the Defendants, as described above, constitute violations of the Plaintiffs' rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and 42 U.S.C. §1983, *et seq*.

50. At no time did Plaintiffs' actions require or warrant Defendants' use of such force. Defendants also used more force than necessary to effect the arrest of Plaintiff Brian Vierstra.

51. Brian Vierstra was not under suspicion for a severe crime and posed no threat of any kind to anyone. There is no evidence that he was armed or violent.

52. At no time did Mr. Vierstra flee or resist. The sole purpose for his interaction was to ask for help.

53. Prior to being violently forced to fall to the ground by OSU Officer Hamilton, Stephanie Vierstra was merely standing outside and waiting to hear whether all the members of the group had been located and were safe.

54. Defendants' use of excessive force was such that a reasonable officer should have known that they were violating Plaintiffs' rights by using excessive force.

55. Defendants' conduct was unreasonable and they should have appreciated the fact that it was unreasonable at the time OSU Officer Hamilton pushed the Vierstras and when OSU Officers violently assaulted Brian Vierstra while placing him in handcuffs.

56. Defendants violated constitutional rights that are clearly established and of which a reasonable officer would have known.

57. As a result of Defendants' conduct herein alleged, Plaintiffs have experienced and will continue to experience, severe physical pain, physical injury, emotional distress, suffering, humiliation, mental anguish and embarrassment, and Defendants are liable to Plaintiffs for all such damages.

### Second Count: Malicious Prosecution – as to all Defendants

58. Plaintiffs incorporate by reference the allegations above, as if fully restated herein.

59. The Defendants knowingly, intentionally and deliberately made, influenced and/or participated in the decision to prosecute Plaintiff Brian Vierstra.

60. Defendants lacked probable cause.

61. As a consequence of the proceeding against him, Mr. Vierstra suffered a deprivation of liberty apart from the initial seizure on September 21, 2023.

62. Specifically, Mr. Vierstra was forced to spend hours in a cold isolated jail cell without medical treatment, food or water. He was further required to attend all criminal court proceedings until his case was dismissed.

63. Defendants further perpetrated malicious prosecution by supporting these false charges against Mr. Vierstra with knowingly false statements to the prosecuting attorneys.

64. The proceedings against Mr. Vierstra were terminated in his favor when the charge against him was dismissed with payment for court costs by Mr. Vierstra.

65. Defendants' actions constitute malicious prosecution and were the direct and proximate cause of physical and psychological injuries and economic damages to Mr. Vierstra.

### Third Count: Intentional Infliction of Emotional Distress - as to all Defendants

66. Plaintiffs incorporate by reference the allegations above, as if fully restated herein.

67. Defendants' actions were wanton and malicious.

68. Defendants' conduct was extreme and outrageous.

69. Defendants intended to cause emotional distress or knew or should have known that their conduct would result in serious emotional distress to the Plaintiffs.

70. Defendants' conduct had the actual effect of causing Plaintiffs to suffer severe emotional distress during and after the incident.

71. Plaintiffs suffered severe emotional distress as a direct result of Defendants' actions.

### Fourth Count: Assault and Battery - as to Defendants Anthony Hamilton and John Doe Officer

72. Plaintiffs incorporate by reference the allegations above, as if fully restated herein.

73. Defendant OSU Officer Hamilton intended to cause harmful and offensive contact to Plaintiffs because when OSU Officer Hamilton violently shoved Brian Vierstra, he knew that other people (including Stephanie Vierstra) were in close proximity. He also shoved with such force (using both hands and while leveraging force with his legs and body), he caused the Vierstras to fall to the ground and suffer severe injuries.

74. Defendant OSU Officer Hamilton and OSU Officer John Doe intended to cause harmful and offensive contact to Brian Vierstra when they approached him while he was already on the ground. While on the ground, they violently jumped on Mr. Vierstra and twisted his arm with such force, they caused Mr. Vierstra to suffer severe injuries.

75. Defendants OSU Officer Hamilton and OSU Officer John Doe did, in fact cause harmful and offensive touching to Plaintiffs as described herein.

76. Defendants acted with a malicious purpose, in bad faith, or in a wanton and reckless manner.

77. As a direct and proximate result of Defendants OSU Officer Hamilton and OSU Officer John Doe's harmful and offensive touching, Plaintiffs suffered physical injuries, medical bills, lost income, and past and future mental suffering, anxiety, emotional trauma, mental anguish, stress, loss of enjoyment and reduction in quality of life.

WHEREFORE, Plaintiffs Brian Vierstra and Stephanie Vierstra demand judgment against the Defendants jointly and severally, for compensatory and punitive damages, in an amount which will fully and fairly compensate them for their injuries therein; reasonable attorney fees and their other costs; and any such other relief to which Plaintiffs are legally entitled.

Respectfully submitted,

PETERSON CONNERS LLP

/s/ Rasheeda Khan
Rasheeda Khan (0075054)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
614.365.7000 *Office*
614.745.8845 *Direct*
614.220.0197 *Facsimile*
rkhan@petersonconners.com *E-mail*
*Counsel for Plaintiffs Brian and Stephanie Vierstra*

## **JURY DEMAND**

Plaintiffs hereby demand a trial by a jury of eight (8) as to all triable issues thereto.

*/s/Rasheeda Z. Khan*

Rasheeda Z. Khan (0075054)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

(b) County of Residence of First Listed Plaintiff: Perry
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Franklin
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Rasheeda Khan Peterson Conners LLP
545 Metro Place South, Suite 435

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | / [ ] 555 Prison Condition | | | |
| | / [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983

Brief description of cause:
civil rights violations

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 9/21/2023
SIGNATURE OF ATTORNEY OF RECORD: *Rasheeda* (signature)

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____